**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABDIEL COLON<br><br>                    Plaintiff,<br><br>      v.<br><br>BRYAN ROBERT ROHENA PEREZ P/K/A BRYANT MYERS; LUIS BEAUCHAMP LLANOS P/K/A ANONIMUS; EMMANUEL GAZMEY SANTIAGO P/K/A ANUEL AA; ALEJANDRO MOSQUEDA PAZ P/K/A ALMIGHTY; MILLO GANG PUBLISHING; RSM PUBLISHING LLC UNIVERSAL MUSIC CORPORATION; DIGIMATRIX DISTRIBUTION LLC; SOURCELID LLC<br><br>                    Defendants. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiff Abdiel Colon, by and through undersigned counsel, brings this Complaint for copyright infringement against Defendants Bryan Robert Rohena Perez, Luis Beauchamp Llanos, Emmanuel Gazmey Santiago, Alejandro Mosqueda Paz, Millo Gang Publishing, RSM Publishing LLC, Universal Music Corporation, Millo Gang Music, Digimatrix Distribution LLC and Sourcelid LLC and alleges as follows:

**INTRODUCTION**

1. This is an action for copyright infringement under the Copyright Act, 17 U.S.C. §§ 106 and 501, arising from the alleged unauthorized reproduction, distribution, creation of derivative works from, and exploitation of the musical recording and composition of the copyrighted musical work "White Angel".

2. Plaintiff Abdiel Colon owns the copyright to White Angel ("the Work"), by virtue of an exclusive license which granted him an assignment of ownership interest in the work. His beneficial interest in the work included the right among others to exclusively record vocal synchronization to the work, to exclusively use the work in the reproduction, duplication, manufacture and distribution of the work as a recording.

Page **1** of **13**

3. This license was obtained from Korean producer Ilgu Kang then professionally known as ItsGoodBeats ("ItsGoodBeats") in an agreement dated March 30, 2015.

4. ItsGoodBeats lives and creates his sound recordings in the Republic of Korea.

5. Plaintiff Abdiel Colon, by and through his counsel, has recently contacted producer Ilgu Kang/ ItsGoodsBeats to confirm Mr. Kang's intent to confer upon him an exclusive license in the work "White Angel" and to obtain one additional interest in the work which had been previously reserved i.e., synchronization rights.

6. A true and correct copy of both the 2015 license agreement and the 2026 addendum are attached here as Exhibit A.

7. Plaintiff alleges that, beginning no later than September 2015 and continuing thereafter, one or more Defendants used protected material from "White Angel" in connection with the recordings "Esclava" and "Esclava Remix" without authorization from the owner of the asserted copyright.

8. The Work was registered with the United States Copyright Office on October 30, 2025, Registration No. SR 1-046-674.

9. A true and correct copy of the copyright registration is attached here as Exhibit B.

10. Plaintiff alleges that on or about September of 2015, Defendant Perez incorporated protected material from the Work into the recording "Esclava".

11. Plaintiff further alleges that on or about January of 2016, Defendants Perez, Beauchamp Llanos, Santiago and Mosqueda Paz by and through their predecessors acted in concert to produce a second recording which incorporated protected material from the Work into a recording entitled "Esclava- Remix" by recording artists Bryant Myers, Anonimus, Anuel AA and Almighty.

12. Upon information and belief, the recordings were distributed and or made available on digital platforms, including YouTube in 2016 and Spotify.

13. Plaintiff further alleges that Defendants Millo Gang Publishing, RSM Publishing LLC, Universal Music Corporation, Millo Gang Music, Digimatrix Distribution LLC and Sourcelid LLC by and through their predecessors have wrongfully derived substantial profits, royalties, and commercial benefits directly from the unauthorized publishing of the Work, which rightfully belong to the Plaintiff.

14. Defendants, at all times relevant to this action, engaged in the unauthorized exploitation of the Work. Despite having actual and/or constructive knowledge that they possessed no legal

title, license, or ownership interest in the copyright of the Work, Defendants proceeded to publish, distribute, and otherwise monetize the Work.

15. A true and correct copy of the accused work Esclava Remix is attached as Exhibit C

## **PARTIES**

16. Plaintiff Abdiel Colon is an individual resident of the state of Pennsylvania.

17. Upon information and belief, defendant Bryan Robert Rohena Perez p/k/a Bryant Myers is an individual resident of the state of Florida.

18. Upon information and belief, defendant Luis Beauchamp Llanos p/k/a Anonimus is an individual resident of the state of Kentucky.

19. Upon information and belief, defendant Emmanuel Gazmey Santiago p/k/a Anuel AA is an individual resident of the state of Florida.

20. Upon information and belief, defendant Alejandro Mosqueda Paz p/k/a Almighty is an individual resident of the state of Florida.

21. Upon information and belief, defendant Millo Gang Publishing, a subsidiary of Millo Gang Music Inc. ("MGP") is a Florida corporation owned by defendant Perez with principal headquarters at 1722 SHERIDAN STREET 137 HOLLYWOOD, FL. US 33020.

22. Upon information and belief, defendant RSM Publishing LLC, a subsidiary of Rimas Publishing Inc. ("RSM") is a limited liability company of the commonwealth of Puerto Rico with principal headquarters at 644 AVE FERNANDEZ JUNCOS, STE 501 SAN JUAN 00907 PR3350 Southwest 148th Avenue Suite 110, Miramar, FL 33027.

23. Upon information and belief, defendant Universal Music Corporation ("UMC") is a Delaware corporation with principal headquarters at 1755 Broadway, New York, NY 10019

24. Upon information and belief, defendant DigiMatrix Distribution LLC ("DD") is a Florida limited liability company with principal headquarters at 10715 Bonne Chance Drive Orlando, FL 32832

25. Upon information and belief, defendant SourceLid LLC ("SL") is a Florida limited liability company with principal headquarters at 777 SW 37th Avenue Suite 510 Miami, FL 33135

## JURISDICTION AND VENUE

26. This is an action arising under the Copyright Act, 17 U.S.C. § 501.

27. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 because it involves federal questions arising under the Copyright Act.

28. This Court has personal jurisdiction over each Defendant to the extent that each Defendant has transacted business in New York and or committed acts giving rise to Plaintiff's claims in or directed to this District.

29. This Court has personal jurisdiction over defendant UMC because it maintains its principal place of business in New York and because it conducts systematic and continuous business in the State of New York.

30. This Court has personal jurisdiction over defendant RSM because it conducts systematic and continuous business in the State of New York.

31. This Court has personal jurisdiction over defendant MGP because it conducts systematic and continuous business in the State of New York.

32. This Court has personal jurisdiction over defendant Alejandro Mosqueda Paz p/k/a Almighty because he conducts systematic and continuous business in the State of New York.

33. This Court has personal jurisdiction over defendant Emmanuel Gazmey Santiago p/k/a Anuel AA because he conducts systematic and continuous business in the State of New York.

34. This Court has personal jurisdiction over defendant Luis Beauchamp Llanos p/k/a Anonimus because he conducts systematic and continuous business in the State of New York.

35. This Court has personal jurisdiction over defendant Bryan Robert Rohena Perez p/k/a Bryant Myers because he conducts systematic and continuous business in the State of New York.

36. Venue is proper under 28 U.S.C. §§ 1400(a) and 1391 in that, upon information and belief, Defendant UMC is a resident of this District because it is a company subject to personal jurisdiction in this District.

37. Venue is also proper under 28 U.S.C. §1391(a)(2) because Defendants do business in this Judicial District and/or because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

**FACTS COMMON TO ALL CLAIMS**

38. ItsGoodBeats is a citizen of the Republic of Korea that creates recordings in the Republic of Korea and offers them for sale.

39. In 2015 and earlier ItsGoodBeats would post his recordings on YouTube and offer them for sale.

40. On March 30, 2015 Plaintiff Abdiel Colon bought an exclusive license to the work entitled "White Angel" from ItsGoodBeats pursuant to a written agreement.

41. The agreement between ItsGoodBeats and Plaintiff Colon clearly granted Plaintiff the exclusive license to use the Work in reproduction, duplication, manufacture and distribution of phonograph records, cassette tapes, compact disks internet downloads and other miscellaneous audio and digital recordings, and any lifts and versions thereof.

42. Plaintiff Abdiel Colon purchased the beat for his independent production efforts to use with his signed artist.

43. A true and correct copy of the exclusive license agreement is attached here as Exhibit A.

44. Plaintiff is the copyright owner of an original work known as White Angel (the "Work") as provided for in 17 U.S.C § 101

45. The Work was registered with the USCO on October 30, 2025 registration no SR 1-046-674 (the "674" registration) and supplemental registration SR0001062416.

46. The Work is on deposit with the 674 Registration.

47. The Work is an original copyrightable work. Plaintiff has complied in all respects with 17 U.S.C. § 101 et seq. and has secured exclusive rights in the Work and has received its copyright registration in the Work with the Copyright Office in accordance with its rules and regulations.

48. Plaintiff alleges that on or about September 2015 Defendant Bryan Robert Rohena Perez p/k/a Bryant Myers incorporated the protected material from the Work into a recording entitled "Esclava" without authorization.

49. "Esclava" was reproduced, distributed, performed, transmitted, and/or otherwise exploited through digital channels without Plaintiff's permission.

50. Plaintiff alleges that the use of protected material from "White Angel" in "Esclava" was unauthorized and infringed on Plaintiff's exclusive rights.

51. Plaintiff further alleges that, on or about January 2016 Defendants incorporated protected material from the Work into another recording entitled "Esclava Remix" by Bryant Myers ft Anonimus, Almighty, and Anuel AA without authorization.

52. "Esclava Remix" was reproduced, distributed, performed, transmitted, and/or otherwise exploited through digital platforms, including YouTube and Spotify, without Plaintiff's permission.

53. Plaintiff alleges that the use of protected material from "White Angel" in "Esclava Remix" was unauthorized and infringed Plaintiff's exclusive rights.

54. Upon information and belief, the Work was copied and distributed without license or permission from Plaintiff by Defendants to be performed publicly by means of a digital audio transmission, thereby infringing on Plaintiff's exclusive rights in the copyrighted work.

55. Defendants, without permission or authorization from Plaintiff or Plaintiff's predecessor-in-interest, actively copied and distributed Plaintiff's copyrighted material and engaged in this misconduct knowingly and in violation of United States copyright laws.

56. Defendants are providing access to the Work despite having no permission to do so.

57. Defendants Perez and Beauchamp Llanos have admitted in interviews that they had access to and took the Work from YouTube and were aware when they distributed the infringing works in 2015 and 2016 respectively that they had no permission to do so.

58. A true and correct copy of said interview is attached here as Exhibit D.

59. During an interview Defendant Beauchamp Llanos discusses how all the performing artists on the Esclava-Remix knew in 2016 that they did not own the musical composition to the recordings Esclava and Esclava-Remix, and that they made it a practice to steal "beats" from YouTube.

60. Defendant Beauchamp Llanos also discusses how the performing artists Defendants Perez, Santiago, and Mosqueda Paz took the song Esclava Remix down from Spotify because they knew they had no rights to the underlying musical composition that had garnered them so much fame.

61. A link to this interview that is hosted on the social media platform YouTube with Defendant Beauchamp Llanos discussing the theft of the beat from YouTube is attached here as Exhibit E.

62. On October 9, 2025, Plaintiff Abdiel Colon was contacted by email by Camille Soto Malave of Glad Empire LLC regarding the Work. In her initial contact to Mr. Colon, Ms. Malave said she was looking for Mr. Colon regarding a recording that he had purchased ten years ago that she would like to purchase from him.

63. A true and correct copy of that email is attached here as Exhibit F.

64. Ms. Malave indicated that she represented Defendant Perez and offered to purchase from Plaintiff all of his rights to the sound recording White Angel.

65. In exchanged for Plaintiff's rights to the Work, Ms. Malave offered to pay Plaintiff $5,000.00 and give him 5% of the publishing rights to the recording Esclava Remix.

66. This is when Mr. Colon learned that his rights had been infringed.

67. Plaintiff did not discover and had no reason to know that his copyrighted work had been incorporated into the infringing recordings until he was contacted by Ms. Malave in October of 2025.

68. On October 13, 2025, Ms. Malave facilitated a Zoom meeting involving Mr. Colon and Mr. Domingo Melendez Rodriguez. Mr. Rodriguez identified himself as Bryant Myers manager.

69. Upon information and belief, Mr. Melendez Rodriguez is the CEO and sole member/ owner of defendant Digimatrix Distribution LLC.

70. In those communications, Defendants' representatives acknowledged Plaintiff's interest in the work. Mr. Rodriguez and Ms. Malave stated that they had previously contacted the producer ItsGoodBeats regarding licensing the Work and were informed by him that he could not sell them any rights to the Work as he had already sold exclusive rights to Plaintiff Colon.

71. Defendants' representatives then offered Plaintiff $10,000.00 and 5% of publishing ownership in the recording Esclava-Remix.

72. During those communications, Plaintiff asserted his rights in the Work and Defendants through their representatives, were placed on notice of Plaintiff's claim of ownership and objection to any unauthorized use.

73. Despite that notice, Defendants have continued to exploit the Work via their inclusion of it in the recordings Esclava and Esclava-Remix.

74. Mr. Colon declined the offer from Ms. Malave and immediately retained legal counsel to take action to remedy the infringement on his copyright.

75. Ms. Malave came back to Plaintiff Colon on December 17th 2026 and offered to him 5% of net sales and publishing; 40% of the original infringing recording and 20% on Esclava-Remix in exchange for his rights in the Work. She also indicated she would take the song down if they did not come to an agreement of terms.

76. A true and correct copy of that conversation and its translation is attached here as Exhibit L.

77. Plaintiff by and through counsel has sought to resolve this matter but no resolution could be reached.

78. On January 29th 2026, Mr. Colon received a message from another member of Mr. Perez's team who identified himself as Mr. Tuti Diaz. Mr. Diaz indicated that he was taking over for Ms. Malave in offering to settle this matter on behalf of Bryant.

79. A true and correct copy of this message from Mr. Tuti Diaz is attached here as Exhibit G.

80. On March 23, 2026, Defendant Perez contacted Plaintiff Colon and offered Plaintiff $20,000.00 and 5% of the publishing on the recording Esclava-Remix to resolve this matter.

81. Again, on April 7th 2026, Plaintiff Colon received a message directly from Defendant Perez p/k/a Bryant Myers. Mr. Perez offered Plaintiff 10% of the publishing on the recording Esclava-Remix and $40,000.00 to resolve this matter.

82. During this conversation, Defendant Perez acknowledged that Ms. Malave had indicated that more compensation was possible, but he said that the song had not earned enough to warrant payment of the compensation. See both conversations attached as Exhibit H with included translations.

83. In February of 2026, Plaintiff by and through his counsel sent take down notices to YouTube, Spotify, Apple Music, Deezer and a host of other streaming services notifying them of the alleged copyright infringement. The infringing works remain down on Apple music.

84. Plaintiff by and through his legal counsel also engaged in settlement and release conversation with legal counsel for Defendant Perez from February 2026 through March of 2026.

85. In March of 2026, Plaintiff by and through his legal counsel again sent take down notices to YouTube regarding the infringing works.

86. Defendant Perez by and through his legal counsel disputed the copyright claims and had the works restored to YouTube and Spotify despite his team's and his own acknowledgement to Plaintiff of his right in the work.

87. By continuing to providing unauthorized access to the Work, Defendant Perez and co-defendants are engaging in willful copyright infringement.

88. The infringement is a copy of a discernable portion of Plaintiff's Work that was distributed and made available by Defendants for public performance.

89. Upon information and belief, Defendants take an active and pervasive role in the musical content distributed to the public, including, but not limited to copying, and selecting the material made available.

90. Defendant Emmanuel Gazmey Santiago p/k/a Anuel AA has stated on February 2, 2026 via his social media platform X that the Esclava Remix has been streamed over 200 million times on Spotify which would generate approximately $1,000,000.00 gross master side revenue.

91. A true and correct copy of a screenshot of Anuel AA's X entry taken from the internet on May 4, 2026 is attached here as Exhibit I.

92. Esclava Remix has streamed over 580 million times on Bryant Myers YouTube channel and an additional 168 million times on GMRecordsTV's YouTube channel which would generate anywhere from $500,000.00 to $2,240,000.00 in revenue.

93. A true and correct copy of a screenshot of Bryant Myers' YouTube channel and GMRecordsTV's YouTube channel with Esclava Remix streaming totals is attached here as Exhibit J.

94. Upon information and belief, the exploitation of the Work has resulted in millions of additional streams and listens worldwide through the incorporation of the Work into the recordings Esclava and Esclava-Remix on other digital platforms like Apple Music, Amazon Music and other similar digital music platforms. Defendants' unauthorized commercial exploitation of the Work has harmed Plaintiff's ability to commercially exploit the Work and has deprived Plaintiff of substantial revenue and business opportunities.

95. Upon information and belief, Defendants have infringed and are infringing the copyright in the Work by unlawfully reproducing and distributing copies of the Work, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

96. Upon information and belief, Defendants seek to further diminish Plaintiff's rights in the Work by selling the infringing recordings to third-party investors in what is known as a sale of catalogue.

97. The natural and probable foreseeable result of Defendants' wrongful conduct has been to deprive Plaintiff of the benefits of exploiting recordings embodying the Work and to injure Plaintiff's relationship with present and prospective consumers.

98. Defendants' production and sale of the infringing products and Defendants' wrongful conduct has also deprived and continues to deprive Plaintiff of the opportunity of expanding the Works good will.

99. Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of Plaintiff's copyright, and in conscious disregard for Plaintiff's exclusive rights in the protected Work.

100. A true and correct copy of the BMI Repertoire Search for Esclava Remix which details each defendant's stake in the song is attached here as Exhibit K.

101. In October 2025, by and through his counsel, Plaintiff contacted Defendant Perez regarding the alleged infringement via email. Despite continuing to contact Defendant Perez from October 2025 through April 2026 with efforts to resolve this matter, no resolution was achieved and Defendants' have continued to reproduce and perform the Infringing Work.

102. Defendants' deliberate infringement of Plaintiff's copyright has greatly and irreparably damaged Plaintiff, and Defendants will continue to damage Plaintiff greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, Plaintiff will have no adequate remedy at law. Accordingly, Plaintiff is entitled to a temporary and permanent injunction in accordance with 17 U.S.C. § 502.

## <u>COUNT ONE</u>

### Copyright Infringement – 17 U.S.C. § 106 and 501

103. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

104. Plaintiff Abdiel Colon owns the exclusive rights asserted in the copyrighted work "White Angel".

105. Without authorization, Defendants infringed Plaintiff's exclusive rights by reproducing, distributing, creating derivative works from, publicly performing, and/or otherwise exploiting protected material from "White Angel" into the recordings "Esclava" and "Esclava Remix."

106. As a direct and proximate result of Defendants' acts, Plaintiff has suffered damages, and Defendants have obtained revenue, profits, or other benefits attributable to the infringement.

107. Plaintiff registered the Work with the Register of Copyrights pursuant to 17 US.C. § 411(a). A true and correct copy of the Certificates of Registration from the U.S. Copyright Office is attached as Exhibit B hereto.

108. Plaintiff is currently and at all relevant times since the infringing works were created has been the owner of rights, title and interest in and to the copyrights of the Work.

109. The Work is a wholly original work that was created in the Republic of Korea and is a copyrightable subject matter under the laws of the Republic of Korea and of the United States.

110. At no time has Plaintiff authorized any Defendant named here to reproduce, distribute, prepare derivative works, or publicly display the Work or any portion thereof.

111. Defendants are willfully infringing Plaintiff's copyright in the Work by reproducing, displaying, distributing, and creating derivative works of the Work without permission in violation of the Copyright Act, 17 U.S.C. § 106.

112. The infringement was willful, executed with full knowledge of Plaintiff's copyright, and in conscious disregard of Plaintiff's exclusive rights in its protected Work.

113. By reason of the infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss, and damage to its ownership rights in the copyrighted Work.

114. Plaintiff seeks appropriate injunctive relief, in accordance with 17 U.S.C. § 502, restraining Defendant, its officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with Defendant from engaging in further acts of copyright infringement.

115. Plaintiff is entitled to recover from Defendants their actual damages and any additional gains, profits, and advantages Defendant has obtained as a result of copyright infringement under 17 U.S.C. § 504.

116. Plaintiff is informed and believes, and on that basis alleges, that unless enjoined by this Court, Defendants will continue their course of conduct and will continue to wrongfully use, infringe upon, sell, and otherwise profit from Plaintiff's copyrighted Work.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

A. Plaintiff respectfully requests a temporary restraining order and a preliminary injunction strictly enjoining and restraining Defendants, and all persons acting in concert with them, from selling, licensing, assigning, or otherwise transferring any rights, title, or interest in the infringing work, including but not limited to the publishing and master recording rights, pending the final adjudication of this matter.

B. Plaintiff further moves the Court to waive the requirement of a security bond pursuant to Fed. R. Civ. P. 65(c), or, in the alternative, to set a nominal bond in the amount of $100.00, on the grounds that the evidence of Defendants' willful infringement is substantial and Defendants will suffer no cognizable injury or loss of legitimate profits by being restrained from the unauthorized exploitation of property they do not own.

C. For a preliminary and permanent injunction enjoining and restraining Defendant and all persons acting in concert with Defendant from reproducing, distributing, creating derivative works, displaying, advertising, promoting, offering for sale and/or selling, or performing any materials that are substantially similar to the copyrighted Work, and to destroy and certify to the Court such destruction or deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in Defendant's possession or control;

D. For a preliminary and permanent injunction enjoining and restraining Defendant and its a

E. gents, servants, employees, attorneys, and all persons acting in concert and participation with it from infringing upon Plaintiff's copyrights.

F. Declaring that Defendants infringed upon Plaintiff's copyright interest in the Work by reproducing, distributing, and commercially exploiting the Work without a license or consent from Plaintiff.

G. Awarding Plaintiff his actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. 504, plus interest and pre-judgment interest as permitted by law;

H. Awarding Plaintiff his taxable costs;

I. For an award of reasonable attorney's fees and costs under 17 U.S.C. § 505; and

J. For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands trial by jury on all claims so triable.

Dated: May 7, 2026

Respectfully submitted,

Adjckwc O. Browne #5526348
For Browne Law LLC
104 West 40th St
Suites 400 & 500
New York, NY 10018
1 347-571-1278
abrowne@lawwhereyouare.com

# EXHIBIT A

1 of 2

**ItsGoodbeats.com Exclusive Beat License Agreement**

This License agreement is made on **Mar 30, 2015** ("Effective Date") by and between **ItsGoodBeats** ("Licensor") and **Abdiel Colon** ("Licensee"). Licensor warrants that it controls the mechanical rights in and to the **"White Angel"** ("Composition") being sold to Licensee as of and prior to the Effective Date.

The Licensee and Licensor have agreed to the following terms:

1. Master Use. The Licensor hereby grants to Licensee an exclusive License to record vocal synchronization to the Composition partly or in its entirety and substantially in its original form ("Master Recording"). The Licensor guarantees that the Composition will not be sold on to any third parties.

2. Mechanical Rights. The Licensor hereby grants to Licensee an exclusive License to use Master Recording in the reproduction, duplication, manufacture, and distribution of phonograph records, cassette tapes, compact disks, internet downloads, other and miscellaneous audio and digital recordings, and any lifts and versions thereof (collectively ,"Recordings") worldwide for the pressing or selling of unlimited copies of such Recordings or any combination of such Recordings. Additionally, Licensor shall be permitted to distribute unlimited internet downloads for non-profit and non-commercial use.

3. Performance Rights. The Licensor hereby grants to Licensee an exclusive License to use the Master Recording in unlimited non-profit performances, shows, or concerts. The Licensee is also permitted to earn an unlimited fee in compensation for ticket sales using the Master Recording in said performances.

4. Synchronization Rights. Licensee cannot use the or any part of the Composition as a background element in TV, Film and DVD projects without obtaining written consent and/or another license agreement.

5. Broadcast Rights. The Licensor hereby grants to Licensee an exclusive license to broadcast or air the Master Recording on an unlimited number of radio stations or station channels, respectively.

6. Credit. The Licensee must include on all productions the producer's name. The Licensee agrees to display this statement on all physical media containing a portion or some of the Composition that is being licensed in this agreement, including but not limited to CD's, CD covers, iTunes, etc.

Example Credits)
Prodcued by ItsGoodBeats

7. Sampling. The Licensee agrees that the Composition is purchased as a "Work Made for Hire" whereby the clearing of any sampled materials is the responsibility of Licensee.

8. Compensation. Payment for this License is non-refundable. If the Licensee fails to account to the Licensor, timely and complete the payments provided for hereunder, the Licensor shall have the right to terminate this License upon written notice to the Licensee. Such termination shall render the recording, manufacture and/or distribution of Recordings for which monies have not been paid subject to and actionable as infringements under applicable law.

9. Term. Executed by the Licensor and the Licensee, this License agreement is to be effective as for all purposes as of the Effective Date and shall not expire.

10. Indemnification. Licensee agrees to indemnify and hold Licensor harmless from and against any and all claims, losses, damages, costs, and expenses, including, without limitation, reasonable attorneys' fees, arising out of or resulting from a claimed breach of any of Licensee's representations, warranties or agreements hereunder.

11. Miscellaneous. This License is non-transferable and is limited to the Composition specified, constitutes the entire agreement between the Licensor and the Licensee relating to the Composition, and shall be binding upon both Licensor and Licensee and their respective successors, assigns, and legal representatives.

# AMENDMENT

AGREEMENT made and entered into as of this 1st day of February, 2026 by and between **ILGU KANG p/k/a "ILGU"** located at 83, Yongjuk 1-ro, Pyeongtaek-si, Gyeonggi-do, Republic of Korea (hereinafter referred to as "Licensor") and **ABDIEL COLON d/b/a LONCO ENTERTAINMENT & MANAGEMENT, LLC** located at 426 Gilham St., Philadelphia, PA 19111 (hereinafter referred to as "Licensee").

WHEREAS, the parties have entered into an Exclusive Beat License Agreement dated March 30, 2015 (hereinafter the "Beat License Agreement");

WHEREAS, the parties have agreed to amend the Beat License Agreement in accordance with the paragraphs below;

NOW THEREFORE, the parties agree to amend the Beat License Agreement, as follows:

The following when executed by the parties shall constitute an amendment to the Beat License Agreement.  Any terms capitalized herein which are defined in the Beat License Agreement shall have the same meaning in this Agreement unless otherwise defined herein.

1.    The Preamble is hereby deemed deleted and replaced with the following:

"This License Agreement dated March 30, 2015 by and between **ILGU KANG p/k/a "ILGU"** ("Licensor") and **ABDIEL COLON d/b/a LONCO ENTERTAINMENT & MANAGEMENT, LLC** ("Licensee") with respect to the master recording and composition entitled "**WHITE ANGEL**" (the "Master")."

2.    The last sentence of paragraph 2 is hereby deemed deleted and replaced with the following:

"Licensee shall be permitted to distribute, stream, download and exploit the Master for commercial and non-commercial purposes."

3.    Paragraph 3 is hereby deemed deleted and replaced with the following:

"Performance Rights: The Licensor hereby grants Licensee an exclusive license to exploit the Master in unlimited commercial and non-profit performances, shows or concerts. Notwithstanding the foregoing and pursuant to Licensee's exploitation of the Master, Licensor shall retain the standard Writer's share of any and all public performance royalties collected by any performing rights organization (PRO) throughout the universe."

4.    Paragraph 4 is hereby deemed deleted and replaced with the following:

"Synchronization Rights: Licensee can issue a synchronization license to third parties in connection with the usage of the Master in television, films, etc."

5.    Paragraph 6 is hereby deemed deleted and replaced with the following:

"Credit: The Licensee shall accord Licensor a Producer/Writer credit in connection with the Master in the liner notes of any record containing the Master or metadata in connection with electronic transmissions and in all print ads placed or controlled by Licensee or its distributor as follows:

"Produced/Written by ILGU"

D://Lonco Ent/Ilgu Kang/Beat License Amendment/02.01.26/v3

Licensee's inadvertent failure or any failure by its distributor to provide such credit shall not be considered a breach of this Agreement."

6.      Paragraph 7 is hereby deemed deleted and replaced with the following:

"In consideration of the sum of **Eight Hundred ($800.00) Dollars**, receipt of which is hereby acknowledged, and other good and valuable consideration, the Master recorded hereunder embodying the results and proceeds of Licensor's services will be considered a "work made for hire" for Licensee from the inception of recording. If the Master is determined not to be a "work made for hire," it will be deemed transferred to Licensee in accordance with this paragraph 7. In such event, Licensor hereby assigns to Licensee all rights throughout the universe, including but not limited to copyright (and all renewals and extensions thereof under any law now or hereafter existing) in and to the Master, from the inception of recording thereof. The Master, from the inception of the recording thereof and all phonograph records and other reproductions made therefrom, together with the performances embodied therein, if any, and all copyrights therein and thereto (including the underlying copyright in the musical composition), throughout the universe, and all renewals and extensions thereof, will be entirely Licensee's property, free of any claims whatsoever. Licensor hereby waives any claim to any moral rights in the Master. Without limiting the generality of the foregoing and notwithstanding anything to the contrary contained herein, Licensee's successors, designees and assigns will have the exclusive, perpetual, unrestricted right throughout the universe: (1) to manufacture, sell, distribute, promote, advertise, and otherwise exploit and advertise phonograph records embodying the Master; (2) to create derivative works, lease, license, convey or otherwise use, alter, adapt, change or dispose of the Master or parts thereof, by any method now or hereafter known in any media or field of use; (3) to perform publicly phonograph records, whether on radio, television, in audiovisual works or elsewhere and other reproductions embodying the Master, all upon such terms as Licensee may approve in Licensee's sole discretion; and (4) to refrain from doing any and/or all of the foregoing in Licensee's sole discretion without any payment to the Licensor other than the fees and royalties referred to in paragraph 7."

7.      Paragraph 11 is hereby deemed deleted and replaced with the following:

"This Agreement shall be governed by and construed in accordance with the laws of the State of New York, provided that the validity of the transfer of copyright ownership shall be assessed in accordance with the laws of the country of origin of the Master recording and composition (i.e., the Republic of South Korea)."

Except as otherwise expressly provided in this Agreement and for the avoidance of doubt, all of the terms and conditions of the Beat License Agreement dated March 30,  2015, shall remain in effect and are hereby ratified and confirmed.

**ACCEPTED AND AGREED TO**:

**LICENSOR**                                                  **LICENSEE**

By: _____            By: _____
   **ILGU KANG**                                              **ABDIEL COLON**
   **p/k/a "ILGU"**                                           **d/b/a LONCO ENTERTAINMENT**
                                                              **& MANAGEMENT, LLC**

2

D://Lonco Ent/Ilgu Kang/Beat License Amendment/02.01.26/v3

**Registration #:**  SR0001062416
**Service Request #:**  1-15119349501



# EXHIBIT B

Law Offices of Robert A. Celestin
Robert A. Celestin
1650 Broadway
Suite 1008
New York, NY 10019 United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.



**Registration Number**

## SR 1-062-416

**Effective Date of Registration:**
March 23, 2026
**Registration Decision Date:**
April 06, 2026

---

## Supplementary Registration

**Supplement To:**    SR1046674, 2025

## Title

**Title of Work:**    White Angel

## Completion/Publication

**Year of Completion:**    2015
**Date of 1st Publication:**    March 29, 2015
**Nation of 1st Publication:**    United States

## Author

- **Author:**    Abdiel Colon
**Author Created:**    sound recording
**Work made for hire:**    Yes
**Citizen of:**    United States
**Domiciled in:**    United States

## Copyright Claimant

**Copyright Claimant:**    Abdiel Colon
426 Gilham Street, Philadelphia, PA, 19111, United States

## Rights and Permissions

**Name:**    Ilgu Kang
**Address:**    83 Yongjuk 1-ro
Pyeongtaek-si
Gyeonggi-do  Korea, South

Page 1 of 2

## Certification

Page 2 of 2

**Name:**  Robert A. Celestin, Authorized agent of Abdiel Colon
**Date:**  March 23, 2026

**Correspondence:**  Yes
**Explanation of Corrections:**  The author and claimant information in the basic registration was submitted in error. The individual Abdiel Colon was the correct author and claimant at the time the basic registration was made.

# EXHIBIT B

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title **17**, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.



**Registration Number**

## SR 1-046-674

**Effective Date of Registration:**
October 30, 2025
**Registration Decision Date:**
November 18, 2025

---

### Title

| | |
|---|---|
| **Title of Work:** | White Angel |

### Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2015 |
| **Date of 1st Publication:** | March 29, 2015 |
| **Nation of 1st Publication:** | United States |

### Author

- **Author:** LONCO ENTERTAINMENT & MANAGEMENT LLC
  **Author Created:** sound recording
  **Work made for hire:** Yes
  **Citizen of:** United States
  **Domiciled in:** United States

### Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | LONCO ENTERTAINMENT & MANAGEMENT LLC |
| | 426 Gilham Street, Philadelphia, PA, 19111, United States |

### Certification

| | |
|---|---|
| **Name:** | Robert A. Celestin |
| **Date:** | October 30, 2025 |

| | |
|---|---|
| **Correspondence:** | Yes |

Page 1 of 1

# EXHIBIT C



YTDown_YouTube_Br
yant-Myers-ft-Anonin

# EXHIBIT D

https://www.youtube.com/shorts/3xIkUVem68c

Actual video file



YTDown_Shorts_Media_3xIkUVem68c_001_720p.mp4

# EXHIBIT E

https://youtube.com/shorts/JlVX7sY490c?si=oJd_ePFjIxto7wPT

Actual video file



b4c38be3-e6cd-451a
-b33d-7d21aeae2ffc.r

# EXHIBIT F

fits in the window

---------- Forwarded message ----------
From: **Camille Soto** <csotomalave@gmail.com>
Date: Thursday, October 9, 2025
Subject: IMPORTANTE Buscando a Abdiel Colon
To: acptrucking215@gmail.com

Saludos me llamo Camille Soto y estoy buscando a Abdiel Colon referente a un ritmo que compro hace 10 años. Quiero ofrecerle un negocio sobre el mismo. Si aun es tu email por favor comunicate conmigo via telefono 7874090556. Por favor y gracias. Es sumamente importante.
Sent from my iPhone

# EXHIBIT G





# EXHIBIT H



Translation:

Defendant Perez: Abdiel, this isn't about money. It's about the fact that here you need to know how to move the pieces correctly. That's why I'm telling you — I'm already a millionaire without this issue. You can imagine that 25 thousand is nothing to me, and it's true. But it's not about that. It's about us reaching an agreement based on what's really happening here."

"And if you're smart and about business, then you negotiate well with me."

Plaintiff Colon: "But Bryant, I *am* negotiating well, papi. I'm not asking you for something crazy!!! And of course, I know you don't need this issue, but I repeat — if it's something fair, we can close this whenever you say."

Defendant Perez: "The fairest thing I can do is give you 5% of publishing and 20 thousand."

"After that, the most likely thing that will happen is the song gets erased to hell, nobody collects anything from it, and you lose the opportunity to work with me and do more things."

Plaintiff Colon: "Well then go ahead and do whatever you want, the hell with it, I've never seen a dollar from the





Translate to English

3:58    .ıll 🔵 100

Prompt:

"Abdiel we're going to close this, bro, I'm going to give you 40 thousand and 10% publishing. Let's close this like that."

**Bryant:**
"What do you think?"

**Green message:**
"Bro, I wanted to resolve this a long time ago!!! The lawyer sent the proposal to yours!!! Bryant, I tried humbly to resolve this with you all, now I don't know what to say."

**Bryant:**
"Abdiel, we are trying to resolve this fairly, but based on the origin of the production and the rights, this number doesn't reflect the reality of the situation."

**Bryant:**
"50–60 nooo Abdiel, sorry. We're not up there. Up there was Camille running her mouth."

**Bryant:**
"Tell me, Abdiel."

**Green message:**
"Relax, for sure."

**Bryant:**
"We're active, let me know if we settle on that bro — 40 thousand and 10% publishing."



*Figure 1 Green Messages are Plaintiff Colon*

# EXHIBIT I

x.com/AnuelWorldwide/status/2018336750960099622

← **Post**

**Anuel AA Worldwide**
@AnuelWorldwide

"Esclava (Remix)" has surpassed 200M streams on Spotify!

The song was removed from the streaming platforms and re-added in late October 2024.

**ESCLAVA REMIX**

BRYANT MYERS X ANONIMUS
ALMIGHTY X ANUEL

ESCLAVA

# EXHIBIT J





**Bryant Myers Ft. Anonimus, Almighty Y Anuel AA - Esclava (Official Remix)**

GMRecordsTV ⊘
206K subscribers                Subscribe                🖒 755K    🖓    ↝ Share    🔖 Save    ⋯

168M views  10 years ago
Descarga: "Esclava Remix" aqui: https://goo.gl/VGoCrr
Sigueme en Instagram: https://goo.gl/26unTP
Sigueme en Facebook: https://goo.gl/7Asj4X ...**more**

# EXHIBIT K



# EXHIBIT L



11:32    .ıll 5G⁵ 🔋

GLAD ›
cuando viene al Publishing, puedes
tirar una contraoferta algo que sea
justo no solamente para ustedes,
pero para mí también...

Wed, Dec 17 at 11:48 AM

Pero es que nosotros le enviamos
al abogado una oferta y dijo que
no. Por eso es que se va a tener
que bajar el tema porque no es
justo lo que tu quieres. Aqui el tema
lo pegaron los muchachos y
tampoco han cobrado de eso asi
como tu piensas. Ellos quieren
hacer el negocio que se le envio al
abogado por email. Es lo que es
justo.

Bueno Camille el negocio que
usted me enviaron es justo para
ustedes, pero no es justo para mí,
si no podemos llegar a un acuerdo
pues La lamentablemente no sé!!!

Ok yo lo bajare entonces. Ellos no
estan de acuerdo con lo que dice
tu abogado. No se como dices que
no es justo para ti cuando tu ni
hiciste el ritmo. Tu solo tuviste la
suerte de comprarlo y con todo y
eso se te esta incluyendo en un
negocio. Nosotros estamos
dispuestos a dar el 5% de ventas
neto y de publishing 40 del original
y 20 del remix. Eso es lo seria justo
considerando los artistas que estan
en el tema. Además aquí hay una

+  ta  iMessage  s que se estan
pagando para tratar de recuperar el
dinero que ha estado cobrando

Ok yo lo bajare entonces. Ellos no estan de acuerdo con lo que dice tu abogado. No se como dices que no es justo para ti cuando tu ni hiciste el ritmo. Tu solo tuviste la suerte de comprarlo y con todo y eso se te esta incluyendo en un negocio. Nosotros estamos dispuestos a dar el 5% de ventas neto y de publishing 40 del original y 20 del remix. Eso es lo seria justo considerando los artistas que estan en el tema. Ademas aqui hay una vuelta de abogados que se estan pagando para tratar de recuperar el dinero que ha estado cobrando otra gente y son gastos que los muchachos han tenido para tratar de resolver esto y poder tener el tema corriendo como se debe. Yo creo que debes considerar lo que te estoy diciendo y si no se puede pues me avisas y con gusto bajo el tema. Ellos llevan mucho tiempo ya sin cobrar eso que tampoco es como que les hace falta. Buen dia.

Translation: Camille Malave: But the thing is, we sent the lawyer an offer and he said no. That's why the song is going to have to be taken down, because what you want is not fair. The guys are the ones who made the song successful, and they also haven't gotten paid from it the way you think. They want to do the deal that was sent to the lawyer by email. That's what is fair."

Plaintiff Colon: "Well Camille, the deal you sent me is fair for you all, but it's not fair for me. If we can't reach an agreement then unfortunately I don't know!!!"

Camille Malave: "Ok, then I'll take it down. They do not agree with what your lawyer is saying. I don't understand how you say it's not fair to you when you didn't even make the beat. You were only lucky enough to buy it, and even so, you're still being included in a business deal. We are willing to give 5% of net sales and publishing: 40% of the original and 20% of the remix. That's what would be fair considering the artists on the song.

Also, there are attorney expenses here because lawyers are being paid to try to recover the money that other people have been collecting, and those are costs the guys have had to incur to try to resolve this and get the song running the way it should.

I think you should consider what I'm telling you, and if it can't be done, then let me know and I'll gladly take the song down. They've already gone a long time without collecting anything, which is not like they desperately need it either.

Good Day!